# NOTICE OF REMOVAL

# Roderick Williams v. KIPP Minnesota

# EXHIBIT A

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Roderick Williams,<br><br>Plaintiff,<br>v.<br><br>KIPP Minnesota,<br><br>Defendant. | Case Type: 7. Employment<br>Case No.:<br>Judge:<br><br>**SUMMONS** |

### THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

1. YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2. YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at: <u>see address below</u>.

3. YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiffs Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for In the Complaint, you must say so in your Answer.

4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint If you do not want to contest the claims stated In the Complaint, you do not need to respond. A Default Judgment can then be entered against you for the relief requested in the Complaint.

5. LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can

Exhibit A

get legal assistance. Even If you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6. ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: May 1, 2023

**SATRE LAW FIRM**

/s/ *Eric D. Satre*
Eric D. Satre, MN Bar No. 183015
Attorney for Plaintiff
INTERNATIONAL PLAZA
7900 International Drive
Suite 300
Bloomington, MN 55425
Telephone: (651) 212-4919
Facsimile: (651) 212-4203
esatre@satrelaw.com
admin@satrelaw.com

**Exhibit A**

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Roderick Williams,<br><br>　　　　　　　　　Plaintiff,<br>v.<br><br>KIPP Minnesota,<br><br>　　　　　　　　　Defendant. | Case Type: 7. Employment<br>Case No.:<br>Judge:<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Roderick Williams, the Plaintiff above-named for her cause of action against Defendant states and alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff is an African American adult male, college graduate, father, grandfather and resident of the State of Minnesota.

2. Defendant KIPP Minnesota (hereinafter "KIPP") is a Minnesota Nonprofit Corporation engaged in the business of operating charter public schools. Its registered office address is located at 5034 North Oliver Avenue Minneapolis, MN 55430. Its registered agent is Alvin Abraham.

3. Plaintiff was hired by KIPP as a Paraprofessional at KIPP North Star Primary on August 6, 2019.

4. At the time of Plaintiff's termination on April 26, 2022, his final rate of pay was $41,011.00 per year.

5. During the final month of his employment, Plaintiff had made several attempts at communicating with human resources to complain about pay discrepancies he was experiencing.

**Exhibit A**

6. Plaintiff has over 20 years of experience working in education with a large portion of that time working directly with students with challenging and disruptive behavior profiles.

7. Plaintiff's responsibilities at KIPP included dealing with disruptive and at times physically aggressive and assaultive students.

8. On April 19, 2022, Plaintiff was working with his one-on-one assignment with a student that manifested sufficient behavioral challenges that he merited one to one support in KIPP's designated "Behavior Room."

9. Plaintiff excused himself from his assignment for a brief bathroom break.

10. Upon his return, his assigned student stuck his leg out and tripped Plaintiff who fell to the ground.

11. The student who tripped Plaintiff had a history of inappropriate behavioral outbursts.

12. Plaintiff was the only adult witness present in the Behavior Room when he was assaulted.

13. Plaintiff asked the student "Why did you trip me?" He received no response.

14. The student then defiantly exited the Behavior Room and as soon as he saw a female teacher in the hallway, he preemptively began to cry and falsely claim Plaintiff kicked him, in a transparent effort to avoid consequences for his assault on Plaintiff.

15. In over two decades of working in education, Plaintiff has never been accused of or sanctioned for assaulting a student.

16. The student was eventually met by other members of the Behavior Team that prevented him from exiting the building.

17. The student was redirected to the playground where he remained under the supervision of the Behavior Team.

Exhibit A

18. Plaintiff was then approached by Ramone Wilder, Middle School Principal/Supervisor and asked him to provide a statement.

19. Plaintiff dictated his statement to Wilder.

20. Plaintiff never saw or approved the final statement.

21. Plaintiff was reassigned to work with fourth grade teacher, Ms. Linda l/n/u for the remainder of the day and after bus duty.

22. While prepping for the next day with Ms. Linda, Ms. D l/n/u from KIPP human entered the classroom.

23. Plaintiff asked her when she would be available, since he still did not have a resolution to communicate to his concern that he was not being paid properly. Ms. D responded by stating that Plaintiff was being summoned to Ms. Dunbar's office.

24. Plaintiff reported to Ms. Dunbar's office where he was informed that he was being fired for "violence against a student" that they claimed occurred earlier in the day [in the incident where the student tripped Plaintiff].

25. Ms. Dunbar, Mr. Wilder, and all other professional staff at KIPP are mandatory reporters. However, Plaintiff was never reported for the pretended violence against a student, nor was local law enforcement notified.

26. Of course, Plaintiff was never sanctioned for the alleged violence by any external administrative body or licensing authority since no investigation substantiated the blatantly false claim.

27. In fact, Plaintiff was never given an opportunity to rebut statements taken or investigative findings used to terminate him following the assault by the the student with an extensive history of inappropriate behaviors who assaulted him.

28. Plaintiff was terminated in a matter of hours from the time the student fabricated his excuse to avoid the consequences of his assault on Plaintiff.

29. Plaintiff had no prior disciplinary history at KIPP concerning his interaction with the students. In fact the only negative history was relegated to claims around attendance and tardiness.

30. Throughout his tenure at KIPP, Plaintiff observed a clear racial double standard that extended to teacher protection. For example, when black staff member Mr. Everett was pushed almost to the floor by a student, the student was not suspended. However, when a white teacher was hit by a student, the student was suspended for multiple days. Likewise, Plaintiff reported being hit by three students, and none of those students were suspended.

31. Plaintiff was terminated from KIPP for false and pretextual reasons.

32. Plaintiff had been attempting to resolve pay discrepancies for weeks prior to the alleged incident that resulted in his termination.

33. The false and pretextual reason given to Plaintiff for his termination at the time was for his latest act was "violence against a student," therefore, warranting termination of our professional relationship and rights to the position."

34. KIPP and its administrative staff are mandatory reporters of any violence against a student. They did not report the allegations against Plaintiff.

35. On January 17, 2023, Plaintiff sent KIPP a demand for payment of all outstanding monies owed.

36. Plaintiff did not receive a response to his demand.

Exhibit A

## COUNT I
### Discrimination based on Race in violation of the MHRA Minn. Stats. §363A
(Against Kipp)

Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

37. Plaintiff was treated differently than similarly situated Caucasian co-workers. Plaintiff was subjected to termination for an allegation of violence against a student.

38. During Plaintiff's tenure at KIPP, a former Dean of Students repeatedly reported similarly situated white female coworker were repeatedly reported for physical misconduct and inappropriate physical interactions with students, the white woman was not even investigated. Instead, complaints against her were summarily disregarded.

39. In contrast, Plaintiff was terminated for a false claim of violence against a student when, aside from being tripped, he had not even touched the child who had a history of behavior issues. Plaintiff was the only adult witness to the alleged conduct.

40. A similarly situated white employee was not terminated when repeated complaints were made about her inappropriate physical and potentially sexual contact with a student.

41. These actions are in violation of the Minnesota Human Rights Act.

42. As a direct and proximate result of the discrimination, Plaintiff has suffered and continues to suffer damages including, but not limited to economic loss, emotional distress, pain and suffering, anxiety, and mental and physical anguish.

## COUNT II
## DEFAMATION

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

43. On April 26, 2022, Defendants created a Notice of Unsatisfactory Work Performance or Conduct stating *"There have been warnings regarding performance and attendance. The latest act was violence against a student, therefore, warranting termination of our professional relationship and rights to the position."*

44. The ***"violence against a student"*** portion of the statement was false, defamatory, and it was not based upon reasonable or probable cause to believe that it was true.

45. If true, that statement of conduct would have necessarily resulted in mandated reports to the appropriate authorities. The fact that those reports were not made reveals the pretextual nature of the allegations.

46. That statement was made with actual malice.

47. That allegation is per se defamatory since it affects Plaintiff's business reputation.

48. Plaintiff was compelled to republish that defamatory reason.

49. As a result, Plaintiff was defamed and he has been and continues to be damaged and suffers losses including, but not limited to, severe emotional distress, physical and mental anguish, pain and suffering, past and future harm to reputation, mental distress, humiliation, and embarrassment.

Exhibit A

## COUNT III
## VIOLATION OF MINNESOTA STATUTES §181.13

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

50. Following his termination, on January 17, 2023, Plaintiff sent KIPP a demand for payment of all outstanding monies owed.

51. Defendants have refused to pay Plaintiff all outstanding monies owed to him as required by statute.

52. Defendants' failure to pay Plaintiff the wages owed is a violation of Minnesota Statute section 181.13 et seq., subjecting the employer to penalties as provided under the statute.

53. Plaintiff is entitled to costs and disbursements, and attorney's fees as provided under Minnesota Statute section 181.171 et seq.

54. Therefore, Plaintiff has been damaged in the amount of his unpaid wages as well as the 15-day daily wage penalty and his reasonable attorney fees and costs.

## COUNT III
## VIOLATION OF MINNESOTA STATUTES §181.13

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

55. Plaintiff reported to Defendant the assault, that resulted in him, as a 55-year-old adult being maliciously tripped by a student, client and revenue source for defendant.

Exhibit A

56.   That same day he reported the assault, Defendant terminated him based on the false reason that he "kicked" the child, something he had never done in his many years of teaching.

57.   The child had a history of behavioral issues and was current in the behavior room and if Defendant's were not merely seeking way to protect themselves against claims by Plaintiff, they would have reported the violence to the authorities.

58.   However, since Defendant wanted to cover up the violence, it avoided its duty to make a report to the necessary authorities. Instead, Defendant behaved as though it did not in any way believe the rhetoric it used to terminate Plaintiff.

59.   As a direct and proximate result of the conduct of Defendant when it sought to punish Plaintiff for truthfully reporting the assault in him by the child, Plaintiff has suffered and continues to suffer damages including but not limited to lost wages and benefits past and future, as well as past and future emotional distress.

**WHEREFORE**, Plaintiff prays that he be granted the following relief:

1.   An Order that defendant Defendants be permanently restrained and enjoined from discriminating based on race with regard to the terms and conditions of employment.

2.   Damages equal to the past and future wages, income, and benefits lost, as well as past and future emotional distress and suffering by reason of defendant's violations of the Minnesota Human Rights Act, Minn. Stats. §363A et. seq.

3.   Compensatory and special damages to be paid by defendants to plaintiff in an amount in excess of Fifty Thousand and No/100 ($50,000.00) Dollars.

**Exhibit A**

4. Treble compensatory, civil penalties and punitive damages as provided in the Minnesota Human Rights Act, Minn. Stat. §363.A.

5. Compensatory and special damages to be paid by defendants to Plaintiff in an amount more than Fifty Thousand and No/100 ($50,000.00) Dollars on each applicable count.

6. Any and all damages pursuant to Minnesota Statutes Section 181.935;

7. Costs and disbursements, and attorney's fees as provided under Minnesota Statute section 181.171 et seq.;

8. On all applicable counts, reasonable attorney's fees, costs and disbursements.; and

9. For such other relief as this Court deems just and equitable.

Dated: May 1, 2023              **SATRE LAW FIRM**

                                /s/ Eric D. Satre
                                Eric D. Satre, MN Bar No. 183015
                                Attorney for Plaintiff
                                INTERNATIONAL PLAZA
                                7900 International Drive
                                Suite 300
                                Bloomington, MN 55425
                                Telephone: (651) 212-4919
                                Facsimile: (651) 212-4203
                                esatre@satrelaw.com
                                admin@satrelaw.com

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211 to the party against whom the allegations in this pleading are asserted.

Dated: May 1, 2023              /s/ Eric D. Satre
                                Eric D. Satre (#183015)

**Exhibit A**