# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RODERICK WILLIAMS,

                                                    Civil No. 23-2200 (JRT/ECW)
                          Plaintiff,

v.

KIPP MINNESOTA,                          **MEMORANDUM OPINION AND ORDER
                                          GRANTING IN PART AND DENYING IN
                                          PART DEFENDANT'S MOTION FOR
                          Defendant.       JUDGMENT ON THE PLEADINGS**

---

Eric D. Satre, **SATRE LAW FIRM**, International Plaza, 7900 International Drive, Suite 300-7044, Bloomington, MN 55425, for Plaintiff.

Dalia Istephanous and John P. Edison, **RUPP, ANDERSON, SQUIRES & WALDSPURGER**, 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402, for Defendant.

Plaintiff Roderick Williams was terminated by KIPP Minnesota ("KIPP") because of a report of violence against a student, but Williams claims that reason was merely pretextual and that KIPP terminated him because of his race.  Williams brought three claims against KIPP, including race discrimination under 42 U.S.C. § 1981, defamation, and demand for payment under Minn. Stat. § 181.13.  The § 181.13 claim has been resolved.  KIPP now seeks dismissal of Williams's other claims.  However, Williams has sufficiently alleged a claim of race discrimination under § 1981 and a claim of defamation under a theory of compelled self-publication.  Accordingly, KIPP's motion for judgment on the pleadings will be granted in part as to the § 181.13 claim and denied in all other respects.

## BACKGROUND

### I.    FACTS

Williams is an African American male who previously worked for KIPP as a paraprofessional.  (Notice of Removal, Ex. C ("Am. Compl.") ¶¶ 1,3, July 24, 2023, Docket No. 1.)  KIPP is a nonprofit corporation operating charter public schools in Minnesota.  (*Id.* ¶ 2.)  At KIPP, Williams worked with students who were disruptive and sometimes physically abusive.  (*Id.* ¶ 8.)

KIPP terminated Williams after a student claimed that Williams kicked him.  (*Id.* ¶¶ 9, 12, 32.)  By Williams's account, when he returned from a brief restroom break the student stuck out his leg, resulting in Williams tripping and falling to the ground.  (*Id.* ¶¶ 9–11.)  After the incident, the student left the room crying, and told another teacher that Williams had kicked him.  (*Id.* ¶ 16.)  For the remainder of the day, Williams was assigned to a different classroom and other staff supervised the student.  (*Id.* ¶¶ 20, 24.)

Williams orally recounted his versions of the events to the principal but claims he was never provided an opportunity to review the statement.  (*Id.* ¶¶ 21–23.)  Later that day, KIPP terminated Williams for "violence against a student."  (*Id.* ¶ 27.)  Williams alleges he was terminated without an opportunity to rebut any information or accusations made by the student.  (*Id.* ¶ 31.)  He explains that everyone at KIPP is a mandated reporter, but nobody reported this incident to any authorities or law enforcement.  (*Id.* ¶¶ 28–29.)  No adult witnesses observed the incident.  (*Id.* ¶ 14.)

Shortly after his termination, Williams received a Notice of Unsatisfactory Work Performance of Conduct ("Termination Notice"), which stated, "There have been warnings regarding performance and attendance.  The latest act was violence against a student, therefore, warranting termination of our professional relationship and rights to the position." (*Id*. ¶¶ 37, 49.)  Both in his complaint and at oral argument, Williams insists that he was later compelled to publish the Termination Notice but did not advise the Court to whom.  (*Id.* ¶ 53.)  Williams acknowledges having a disciplinary history regarding his attendance and tardiness but alleges never having been "accused of or sanctioned for assaulting a student." (*Id.* ¶¶ 18, 33.)

Apart from the incident resulting in his termination, Williams pleads two other workplace grievances.  Shortly before his termination, he had been trying to communicate with Human Resources regarding pay discrepancies.  (*Id.* ¶¶ 5–6, 36.)  Williams also recounts discriminatory conduct he observed during his tenure, including a "clear racial double standard" with regard to teacher protection.  (*Id.* ¶ 34.)  Specifically, Williams alleges that students who assaulted white teachers were disciplined, while those who assaulted Black teachers were not.  (*Id.*)  Williams also details an occasion when a white coworker was neither investigated nor terminated for "inappropriate physical interactions with students."  (*Id.* ¶ 42.)

## II.    PROCEDURAL HISTORY

Williams initiated this action in Hennepin County District Court alleging race discrimination under the Minnesota Human Rights Act ("MHRA"); defamation; and a

demand for payment owed under Minn. Stat. § 181.13. (*See* Notice of Removal, Ex. A.)

KIPP filed a motion to dismiss. (*Id.*, Ex. B.) Williams amended his complaint, substituting

a claim for race discrimination under 42 U.S.C. § 1981 in lieu of his MHRA claim. (*See* Am.

Compl. ¶¶ 41–48.) KIPP removed the action to federal court and filed a motion for

judgment on the pleadings. (Notice of Removal at 1; Mot. for J. on the Pleadings, Sept.

19, 2023, Docket No. 9.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P.

12(c). The Court analyzes a motion for judgment on the pleadings under the same

standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Ashley*

*Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

In reviewing a motion to dismiss, the Court considers all facts alleged in the

complaint as true to determine if the complaint states a "claim to relief that is plausible

on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "accept[s] as true all facts pleaded

by the non-moving party and grant[s] all reasonable inferences from the pleadings in

favor of the non-moving party." *Syverson v. FirePond, Inc.,* 383 F.3d 745, 749 (8th Cir.

2004) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458,

462 (8th Cir. 2000)). However, the Court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

## II.    DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

KIPP moves for judgment on the pleadings arguing that Williams failed to adequately plead each claim. Williams informed the Court at oral argument that he would no longer pursue his Minn. Stat. § 181.13 claim, so the Court will grant KIPP's motion in part and dismiss that claim with prejudice. The Court rejects KIPPs' arguments as to the remaining claims and, accordingly, will deny the motion in part, allowing Williams's § 1981 and defamation claims to proceed.

### A.    42 U.S.C. § 1981 Claim

Williams brings a claim for race discrimination under 42 U.S.C. § 1981. KIPP argues this claim is insufficient for two reasons. First, because Williams failed to plead two prima facie elements under the *McDonnell Douglas* framework. And second, because he failed to plead that race was the "but for" cause of his termination. While both may be compelling reasons to grant summary judgment, neither are sufficient to grant KIPP's motion for judgment on the pleadings.

### 1.    *McDonnell Douglas* **Analysis**

When alleging a claim of race discrimination under § 1981, a plaintiff may proceed on a disparate treatment or direct evidence theory. *See Wilson v. CFMOTO Powersports, Inc.*, No. 15-3192, 2016 WL 912182, at *4 (D. Minn. Mar. 7, 2016). To plead a case for disparate treatment under § 1981, courts apply the *McDonnell Douglas* burden shifting framework. *Glover v. Am. Credit Acceptance*, No. 22-1121, 2023 WL 158198, at *4 (D. Minn. Jan. 11, 2023); *Gordon v. Shafer Contracting Co.*, No. 04-3013, 2006 WL 738031, at *3 (D. Minn. Mar. 22, 2006). The burden shifting framework first requires a plaintiff to prove a prima facie case of discrimination, after which the burden shifts to the employer to dispute that prima facie showing by articulating a non-discriminatory reason. *Young v. Builders Steel Co.*, 754 F.3d 573, 577–78 (8th Cir. 2014). If the employer provides a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason was pretextual for discrimination. *Id.* at 578. The prima facie requirements are not meant to be onerous. *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003).

To plead a prima facie case of race discrimination using the *McDonnell Douglas* framework, a plaintiff must show: (1) he was a member of a protected class; (2) he was otherwise qualified or meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) that the circumstances allow for an inference of discrimination. *Burns v. Hy-Vee, Inc.*, No. 02-254, 2003 WL 21303185, *4 (D. Minn. May 23, 2003) (citing *Taylor v. Sw. Bell Telephone Co.*, 251 F.3d 735, 740 (8th Cir. 2001)); *Young*, 754 F.3d at 577. Discrimination can be inferred when similarly situated employees

outside of the protected class are treated differently.  *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8ᵗʰ Cir. 2023).

In this case, the only two elements in dispute are whether Williams was meeting KIPP's legitimate expectations and whether the circumstances allow for an inference of discrimination.

### a.    Meeting Employer's Legitimate Expectations

KIPP argues that Williams's claim under § 1981 must fail because he failed to plead that he was meeting KIPP's legitimate expectations.  The exact requirements under this prong are unclear but the Eighth Circuit has definitively noted that a plaintiff need not disprove the reasons for his or her termination at the prima facie stage.  *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8ᵗʰ Cir. 2008).  As such, the reason for termination is typically removed from the expectation analysis.  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8ᵗʰ Cir. 2010).

Removing the alleged violence from the discussion, the only infractions on Williams's employment record are tardiness and absenteeism.  Non-precedential district court opinions have reached different outcomes on the relevance of tardiness and absenteeism.  *Compare Lorenz v. Tyson Foods, Inc.*, 147 F. Supp. 3d 792, 801 (W.D. Iowa 2015)(note: is this Northern or Southern, there is no Western) (finding that while a reasonable juror could find tardiness to be a failure to meet expectations, the defendant was not entitled to this finding as a matter of law) *with Fuller v. Alliant Energy Corp. Servs., Inc.*, 456 F. Supp. 2d 1044, 1065 (N.D. Iowa 2006) (finding excessive absenteeism as a

failure to meet legitimate employment expectations). Because the sufficiency of tardiness and absenteeism under this prong is unclear KIPP is not entitled to a finding as a matter of law that Williams was not meeting KIPP's legitimate expectations.

### b.    Inference of Discrimination

Williams pleads an inference of discrimination via two paths: that generally KIPP created an environment that treated Black teachers differently, and that a similarly situated white employee was treated differently than Williams under comparable circumstances. At the pleading stage, both plausibly allege an inference of discrimination.

Williams pleads general workplace racial discrimination. For example, he alleges that students who attack white teachers are reprimanded while those who attack Black teachers are not. He includes first-hand experience of this treatment when a student assaulted him, and that student went unpunished. The treatment of other Black employees could plausibly allow for an inference of discrimination. *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004) ("[E]vidence of racial bias in other employment situations could permissibly lead to the inference that management was similarly biased in the case of [the plaintiff's] firing."); *see also Stewart v. Rise, Inc.*, 791 F.3d 849, 859 (8th Cir. 2015) (describing that a decisionmaker's tolerance to a hostile environment can be relevant to alleged discriminatory motive in termination). Williams has thus presented factual pleadings to suggest that the environment at KIPP may have operated in a racially biased way, which is sufficient for an inference of discrimination at the pleading stage.

Williams also alleges disparate treatment of a similarly situated employee, which can supply a basis for an inference of race discrimination. *Yang*, 79 F.4th at 964. At the pleading stage, a plaintiff need "only show that the employees engage in the same or similar conduct but with disparate treatment." *Thompson v. Westmore Indus.*, No. 16-4024, 2017 WL 2841228, at *5 (D. Minn. June 14, 2017) (cleaned up) (citing *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 461 (8th Cir. 2010)); *see also Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009). Williams meets this standard in his Amended Complaint.

Williams claims that while a white employee engaged in inappropriate physical contact with a student without a resulting investigation or termination, KIPP terminated Williams the day that he was charged with similar allegations. The white teacher, who was employed in a similar position as Williams at the same institution, engaged in inappropriate physical conduct with a student. Violence against a student and inappropriate physical conduct meet the pleading requirement of "same or similar conduct." *Thompson*, 2017 WL 2841228, at *5. Further, Williams was terminated while the white employee was not. On these facts, Williams has pleaded that KIPP treated someone outside of Williams's protected class differently for similar conduct and has therefore sufficiently alleged disparate treatment.

### 2. "But For" Causation

KIPP argues that because Williams failed to plead his race was the "but for" cause of his termination, his claim must fail. A plaintiff bringing a claim under § 1981 has the burden to show that race was the "but for" cause of his injury throughout the life of the

claim. *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 333–36 (2020). It is therefore insufficient, even at the pleading stage, to show that race was merely a potential reason or motivating factor. *Id.* The Supreme Court declined to explain how the "but for" cause fits within the *McDonnell Douglas* framework. *Id.* at 340–41. Reconciling the application of *McDonnell Douglas* with "but for" causation is difficult, but at this stage, the Court need not resolve that issue.

Williams adequately pleaded that but for his race he would not have been terminated because KIPP did not report the incident and KIPP failed to protect Black teachers. KIPP's alleged failure to report the incident is significant because seemingly, it either ignored its mandated reporting duties or did not find the allegations credible enough to warrant reporting. However, it still used those allegations as the basis for Williams's termination. That suspicious conduct paired with allegations that KIPP condoned disparate treatment of Black employees meets the "but for" cause at the pleading standard.

\*   \*   \*

The Court finds that Williams sufficiently pleaded the prima facie elements of a race discrimination claim and that race was the "but for" cause of his termination. Accordingly, the Court will deny KIPP's motion for judgment on the pleadings on Williams's § 1981 claim.

### B.      Defamation Claim

Williams brings a defamation claim for KIPP's Termination Notice under a compelled self-publishing theory.  KIPP argues that the defamation claim fails because of the qualified privilege afforded to employers was not overcome by a showing of actual malice and Williams provides no specifics as to whom he published the statement.

To state a claim for defamation, a plaintiff must prove that a false statement about the plaintiff, was published to a third party and that publication harmed the plaintiff. *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019).  The publication prong can be met when the plaintiff was compelled to self-publish the defamatory statement and the speaker reasonably knew that the plaintiff would feel compelled to self-publish.  *Lewis v. Equitable Life Assurance Soc. of the U.S.*, 389 N.W.2d 876, 886 (Minn. 1986).  Yet, in the employment context, courts recognize a qualified privilege between former and prospective employers if the statement was made in good faith for a legitimate purpose.  *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 257 (Minn. 1980). Thus, even when a plaintiff has shown that they felt compelled to self-publish a defamatory statement, the employer may be entitled to qualified privilege unless the plaintiff can show actual malice.  *Lewis*, 389 N.W.2d at 889–91.  To prove actual malice, the plaintiff must show that the statement was made with ill-will or to cause harm to the plaintiff.  *Stuempges*, 297 N.W.2d at 257.

Williams has plausibly alleged all the elements of a compelled self-publication defamation claim.  KIPP could have reasonably known the Williams may be compelled to

disclose the reasons for his termination to prospective employers because of its status as a mandated reporting agency and because in the normal course of job seeking, it is commonplace to explain separation from previous employment. *Lewis*, 389 N.W.2d at 887; *Keuchle v. Life's Companion P.C.A., Inc.*, 653 N.W.2d 214, 219–20 (Minn. Ct. App. 2002).

Additionally, Williams's Amended Complaint alleges actual malice, sufficient to overcome the qualified privilege attributed to KIPP. Williams contends that violence against a student is subject to mandated reporting guidelines at KIPP. KIPP cites that violence as the reason for Williams's termination, yet it did not actually report the alleged violence. Further, Williams alleges that KIPP never provided him the opportunity to rebut the student's allegations. Additionally, Williams describes recent disputes with Human Resources about pay discrepancies. These factual allegations are enough at the pleading stage to infer actual malice.

Finally, KIPP argues that Williams never actually self-published the statement to anyone. However, the Amended Complaint specifically alleges that Williams "was compelled to republish the defamatory reason," which he confirmed at oral argument. (Am. Compl. ¶ 53.) While a defamation claim requires some additional specificity, Williams has met the pleading standard here by pleading who made the statement and the verbatim text of the statement. *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1001–02 (D. Minn. 2006). Williams would have more easily met this standard by identifying

specific instances of self-publication, but the Court will not require more of Williams than that imposed by the Federal Rules of Civil Procedure.  Thus, the Court will deny KIPP's motion for judgment on the pleadings with respect to Williams's defamation claim.

## CONCLUSION

Williams claims that KIPP terminated him not for allegedly violent conduct, but instead because of his race.  Though KIPP argues that Williams's claims fail, the Court will not apply a summary judgment standard at the pleading stage.  Because Williams's § 1981 and defamation claims are sufficiently pleaded at this stage, the Court will deny KIPP's motion to for judgment on the pleadings as to those claims.  Because Williams agreed to forgo his claim under Minn. Stat. § 181.13, the Court will grant KIPP's motion for judgment on the pleadings with respect to that claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings [Docket No. 9] is **GRANTED in part** and **DENIED in part** and Claim III is **DISMISSED with prejudice**.

DATED:  May 24, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge